## Chicago Forge and Bolt Co., and Walter L. Lee v. Louis Rose.

1. MALICIOUS PROSECUTION—*Probable Cause.*—A belief of the guilt of the accused, founded on circumstances tending to show that he has committed a criminal offense, is sufficient to show probable cause.

2. SAME—*Advice of Counsel.*—If a party communicate to counsel all the facts bearing upon the guilt of the accused, of which he has knowledge or could have ascertained by reasonable diligence, and in good faith acts upon the advice of such counsel, he can not be held responsible in an action for malicious prosecution for his conduct.

3. SAME—*Advice of Counsel a Question of Fact.*—It is a question of fact, in an action for malicious prosecution, whether a party has fairly communicated to his counsel the facts within his knowledge, and used reasonable diligence to ascertain the truth, and whether he acted in good faith upon the advice received from counsel.

4. JUDGMENTS—*Effect of a Reversal.*—The reversal of a judgment by the Appellate Court destroys its effect as an estoppel; the judgment no longer effects a merger of the cause of action, and it does not bar a second action on the same demand.

**Malicious Prosecutions.**—Appeal from the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in this court at the October term, 1896. Reversed with a finding of facts. Opinion filed March 8, 1897.

### STATEMENT OF THE CASE.

This was a suit for malicious prosecution, brought by appellee against the Chicago Forge and Bolt Company and Walter L. Lee, its manager, appellants. On October 27, 1892, appellant Lee, on behalf of his company, made complaint before Justice Blume, charging that appellee had unlawfully and willfully concealed a certain crime committed by one A. Burnstein, Herman Peter Burnstein, Louis Burnstein and Frank H. Smiley, to wit, the crime of conspiring to obtain $10,000 of the Chicago Forge and Bolt Company by false pretenses, and that said Rose had harbored, assisted and maintained each of said conspirators, and had in fact declared that he would not give up or reveal the facts of said crime for $1,000. On this complaint a warrant issued, and appellee was arrested. This proceeding was dismissed

for want of prosecution. It appears that afterward, in the Criminal Court, the three Burnsteins were found guilty; as to appellee a *nol pros.* was entered. After this he brought this action, wherein the jury returned for him a verdict for $7,000, from which there was remitted $6,300, and judgment was entered for $700.

MAHER & GILBERT, attorneys for appellants.

B. M. SHAFFNER, attorney for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

To the maintenance of an action for malicious prosecution, proof of two things is essential, viz. : A want of probable cause for the prosecution complained of, and that it was malicious. Proof of a want of probable cause having been made, malice may, but need not be, inferred by the jury; but from proof of malice the jury can not infer that there was a lack of probable cause. Smith v. Michigan Buggy Co., 66 Ill. App. 516; Epstein v. Berkowsky, 64 Ill. App. 498.

In the present case, the issue was not whether appellee was guilty of the offense for which he had been prosecuted.

A question presented was whether appellants had probable cause for believing him so guilty at the time they instigated the prosecution against him. Upon this there was much uncontradicted evidence that they had probable cause; while the clear preponderance, also, of the testimony, concerning which there was a conflict, is in harmony with the undenied evidence. A belief of the guilt of the accused, founded on circumstances tending to show that he has committed a criminal offense, is sufficient to show probable cause. Jacks v. Stimpson, 13 Ill. 702.

There was a failure to establish want of probable cause, and the jury should, for this reason, have been instructed to find for the defendant. Harpham v. Whitney, 77 Ill. 32–39–42; 14 Am. & Eng. Ency. of Law, 45.

If a party communicate to counsel all the facts bearing upon the guilt of the accused of which he has knowledge, or could have ascertained by reasonable diligence, and in good faith acts upon the advice of such counsel, he can not, in this form of action, be held responsible for such conduct. It is a question of fact in such case, whether the party has fairly communicated to his counsel the facts within his knowledge, and used reasonable diligence to ascertain the truth; and also whether he acted in good faith upon the advice received from counsel.    Anderson v. Friend, 71 Ill. 475; 14 Am. & Eng. Ency. of Law, 53.

In the present case it appeared that appellants did consult reputable counsel, and did communicate to him all the facts they had learned and all which there is any reason for thinking they, by reasonable diligence, could have learned; that such counsel advised the prosecution, and appellants, in good faith, afterward acted upon such advice.

It also appeared that appellants' counsel saw the state's attorney and told him all that he knew and had been informed, and was by the state's attorney advised to proceed against appellee and the Burnsteins before a justice of of the peace, as was afterward done.

There was no evidence tending to show that appellants did not act in good faith in prosecuting appellee.

We are of the opinion that the judgment of the Superior Court should be reversed without a remanding order; a finding of facts being here made.    As to the effect of a reversal without remanding, in Bacon's Abridgment, Error, M. 2, the rule is thus declared :

"If judgment be given against the defendant, and he bring a writ of error upon which the judgment is reversed, the judgment shall only be *quod judicium reversetur*, for the writ of error is brought only to be eased and discharged from that judgment."

It was formerly a question whether upon the reversal of a judgment for the plaintiff, the court could grant a *venire facias de novo.*

Lord Mansfield, in Harwood v. Goodright, 1st Cowper,

87, suggested a doubt as to this, but in the same case expressed the opinion that if such writ had been asked for the court could have granted the same.

In Sterrett v. Bull, 1 Binn. 234, the case of Street v. Hopkinson, 2 Strange's Reports, 1055, was referred to, in which it was held that in such case the court could not award a *venire de novo;* but the court in Sterrett v. Bull did award a *venire de novo.* basing its action largely upon the practice adopted by the Supreme Court of the United States.

And it is said in Fries v. Pa. R. R. Co., 98 Pa. St. 142, that the power of the court to award a new trial in the case of a reversal of the judgment of the court below, is well settled and that a judgment of reversal without a venire is not such a final judgment that an execution can issue thereon for the collection of costs.

And in Mercer v. Watson, 1 Watts, 330, the court say : " A judgment merely reversing the judgment of the court below, rendered on a general verdict, may be, and often is, for a cause that does not ultimately vary or change the final determination of the case.   It may furnish some ground to presume that the party against whom the writ of error was sued out. or the court, or both, if you please, thought that from the nature of the case that had been declared, a *venire facias de novo* would not be likely to be available to the defendant in error; but not to prevent absolutely his bringing a new action in case he should afterward change his mind, or discover that he can supply what was wanting before, or in any way overcome the difficulty or objection then interposed to his recovery."

In 2 Phillips on Evidence, Cowan & Hill's notes, marginal paging 18, it is said : " So the reversal of a judgment proves nothing but its own correctness.   It operates no further than to nullify what has been done, but in other respects the parties are generally left in the same situation as to their rights and remedies touching the matter in controversy as if no such judgment had ever existed."

The rule, as announced in Black on Judgments, Sec. 683, is : " The reversal of a judgment throws the whole matter

Chicago Forge and Bolt Co. v. Rose.

open and destroys its effect as an estoppel.    The judgment no longer effects a merger of the cause of action, and it does not bar a second action on the same demand."

To the same effect is Sec. 481 of Freeman on Judgments. See, also, Taylor v. Smith, 4 Ga. 133; Close v. Stuart, 4 Wend. 95; Trevor v. Wall, 1 Durnford & East, 151; Street v. Hopkinson, 2 Strange's Repts. 1055; Union National Bank v. Manistee Lumber Co., 43 Ill. App. 525.

The rule that a mere reversal by a superior court of the judgment of an inferior court for a plaintiff, is not a bar to another action, was recognized by the legislation of this State seventy years ago, perhaps before.    See Sec. 9 of the Act of Limitations, in force June 1, 1827; Revised Laws of 1833; Sec. 12 of Chap. 46 of Revised Statutes of 1845, and Section 25 of the Statute of Limitations, in force July 1, 1873, which last named section is as follows:

" In any of the actions specified in any of the sections of said act, if judgment shall be given for the plaintiff, and the same be reversed by writ of error, or upon appeal; or if a verdict pass for the plaintiff, and, upon matter alleged in arrest of judgment, the judgment be given against the plaintiff; or, if the plaintiff be nonsuited, then, if the time limited for bringing such action shall have expired during the pendency of such suit, the said plaintiff, his or her heirs, executors or administrators, as the case shall require, may commence a new action within one year after such judgment is reversed or given against the plaintiff, and not after."

And see Section 4 of Chapter 16 of the Statute of James the First, entitled " An act for limitations of actions and for avoiding suits in law," which was the first statute of limitation as to personal actions known to English jurisprudence.

The rule as to the effect of the mere reversal by a superior court of the judgment of an inferior court is so well settled, that no doubt has arisen as to the consequence of such reversal by this court.    It is only when, as in the present case, the final determination of the case by this court is the result, wholly or in part, of a finding of the facts concerning the matter in controversy different from the finding of

the court from which the cause was brought; and a finding of facts is therefore made by this court, that a question has arisen as to the effect of a reversal, with such finding of facts by this court. The finding of facts provided for by statute, and made in this case, is not a finding that is in any other suit in any way or wise conclusive upon the parties to the litigation, or can be given in evidence against or for either. It is a placing upon record, as provided by statute, certain reasons moving this court to the action taken by it, and is a determination upon which the Supreme Court acts in an appeal from the judgment in which such finding is made. The judgment of reversal is, notwithstanding such finding, the same as any other judgment of reversal without remanding, a thing which puts an end to the litigation in this cause, so far as this court can do so without concluding the rights of either party as to any future or other suit.

The judgment of the Superior Court is reversed without remanding the cause. A finding of facts will be here made.

This disposes of the present action, but will not be a bar to a future action for the same cause, if one shall be brought by the plaintiff.

Reversed, with finding of facts here.